## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| S.M., by Next Friend MARIO RENE MENDOZA; K.G., by Next Friend ANGEL LUCIANO GONZALEZ; ELVIS NUNEZ; and ASOCIACIÓN DE FAMILIAS UNIDAS EN ACCIÓN, on behalf of themselves and others similarly situated, | Civil Action No. |
| Plaintiffs, | **COMPLAINT - CLASS ACTION** |
| v. | |
| KAREN G. ST. GERMAIN, Commissioner of the Office of Motor Vehicles, in her official capacity; and JAMES M. LEBLANC, Secretary of the Louisiana Department of Public Safety and Corrections, in his official capacity, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## NATURE OF THE ACTION

1.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution repudiates gradations of citizenship.[1] Yet, that is precisely the harm that the policy and practice challenged here inflicts. It creates a sub-class of U.S. citizens and lawfully present Louisiana minors by rendering them undeserving of obtaining a driver's license or identification card because of their parents' alienage, national origin, and immigration status. Because the Equal Protection Clause proscribes such unequal treatment, Plaintiffs bring this action.

2.     The three individual Plaintiffs—two U.S.-born minors and one lawfully present youth—are eligible for a Louisiana temporary instructional permit, driver's license, or state identification card but for Defendants' discriminatory policy and practice. That policy and practice rejects their immigrant parents' unexpired foreign passports as proof of identity to co-sign Plaintiffs' applications but instead requires them to produce a U.S. driver's license or identification card—which they do not have and cannot acquire. That policy and practice leaves these youth without access to a driver's permit, driver's license, or state identification card. Organizational Plaintiff Asociación de Familias Unidas en

---

[1] *Intercommunity Justice and Peace Center, et al. v. Norman,* 402 F.Supp.3d 405, 414 (S.D. Ohio 2019) ("[t]here's no gradation of citizenship" under the Equal Protection Clause).

Acción's membership are impacted by Defendants' discriminatory policy and practice.

3.    Defendants' discriminatory policy and practice deprives Plaintiffs and hundreds of youths like them across Louisiana of a necessary credential for gaining independence, supporting themselves, assisting their families financially, attending school and extra curricula activities, attending religious activities, visiting relatives, and engaging in normal activities of daily living. Defendants' discriminatory policy and practice also impedes a familiar rite of passage for these teenagers.

4.    Plaintiffs challenge Defendants' policy and practice of rejecting their parents unexpired foreign passports instead requiring them to produce a U.S. driver's license or identification card as discriminatory on account of their parents' alienage, national origin, and/or immigration status in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Defendants' unlawful action also violates Title VI of the Civil Rights of 1964, 42 U.S.C. § 2000d.

5.    Plaintiffs also challenge Defendants' practice of not affording them notice and an opportunity to be heard when Defendants reject their applications for a temporary instructional permit, driver's license, or state identification card, as a

3

violation of the Due Process Clause of the Fourteenth Amendment to the U.S.

Constitution. Defendants' failure to provide notice and an opportunity for review

also violates La. R.S. § 32:419.

6.     Plaintiffs, on behalf of themselves and others similarly situated, seek

declaratory and injunctive relief for Defendants' unlawful conduct.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to

28 U.S.C. § 1331 because this action arises under the Constitution and laws of the

United States, and pursuant to 28 U.S.C. § 1343 because this action seeks to

redress the deprivation, under color of state law, of Plaintiffs' and putative class

members' constitutional and statutory rights and to secure equitable and other

relief for the violation of those rights. This Court also has supplemental jurisdiction

under 28 U.S.C. § 1367.

8.     Plaintiffs seeks declaratory and injunctive relief, and any other

appropriate relief, pursuant to 28 U.S.C. § § 2201 and 2202; Federal Rules of Civil

Procedure 23, 57 and 65; and 42 U.S.C. § 1983.

9.     Venue is proper under 28 U.S.C. § 1391(b). Defendants are sued in

their official capacities and their offices reside in this District. The challenged

policy and practice is pursuant to directives generated by Defendant, James M.

LeBlanc, Secretary of the Department of Public Safety and Corrections under La. R.S. § 32.401, *et seq*., and administered by Defendant, Karen G. St. Germain, Commissioner of the Office of Motor Vehicles. Defendants' headquarters are in Baton Rouge, Louisiana, which is located within this District.

## PARTIES

### Plaintiffs

10.    S.M. is a 16-year-old, U.S.-born citizen. She currently resides in Plaquemines Parish. She is proceeding in this litigation by her initials and by and through her parent and next friend, Mario Rene Mendoza, pursuant to Rules 5.2(a)(3), 17(c)(2) of the Federal Rules of Civil Procedure.

11.    K.G. is a 15-year-old, U.S.-born citizen. She currently resides in Orleans Parish. She is proceeding in this litigation by her initials and by and through her parent and next friend, Angel Luciano Gonzalez, pursuant to Rules 5.2(a)(3), 17(c)(2) of the Federal Rules of Civil Procedure.

12.    Elvis Nunez is an 18-year-old permanent resident alien. His primary residence is in St. Tammany Parish.

13.    Asociación de Familias Unidas en Acción is a membership-based non-profit corporation under Louisiana law, with a principal place of business in Orleans Parish.

**Defendants**

14.     Defendant James M. LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections ("DPS&C"), is sued in his official capacity. Defendant Le Blanc, as DPS&C Secretary, is responsible for the lawful licensing of operators of motor vehicles under Louisiana law. Under La. R.S. § 32.402(A), for example, the DPS&C  is charged with issuing to "every person who operates a motor vehicle which is designed as being in … Class … 'E'… before driving or operating any such motor vehicle on any public street… an appropriately classified driver's license with all necessary endorsements."

15.     Defendant Karen G. St. Germain, Commissioner of the Louisiana Office of Motor Vehicles ("OMV"), is sued in her official capacity. Pursuant to La. R.S. § 36:408(D), the OMV is delegated the authority to "perform the functions of the state relative to the examination and licensing of drivers of motor vehicles within the state." Defendant St. Germain  is responsible for policies, rules, directives, and patterns or practices of OMV relative to the issuance of driver's licenses and identification cards.

## LEGAL FRAMEWORK

### A.  The Federal REAL ID Act Sets Uniform Standards for Issuance of a Driver's License or Identification Card

16.    Enacted in 2005 under the Emergency Supplemental Appropriation Act for Defense, the Global War on Terror, and Tsunami Relief, the REAL ID Act standardizes requirements for the issuance of a state driver's license or identification card for official purposes, including boarding federally regulated commercial aircrafts, accessing Federal facilities, and any other purpose that the Secretary of Homeland Security shall determine. REAL ID Act of 2005, Pub. L. No. 109-13, May 11, 2005, 119 Stat. 231, § 202(a) (codified at 49 U.S.C. § 30301 note) [hereinafter "REAL ID Act"].

17.    To obtain a REAL ID-compliant driver's license or identification card, an applicant must present, and a state must verify, the following information:

A) A photo identity document or non-photo identity document if it includes both the person's full legal name and date of birth;

B) Documentation showing the person's date of birth;

C) Proof of social security account; and

D) Documentation of the person's name and address of principal residence. § 202(c)(1); 6 C.F.R. § 37.11(c)-(g).

7

18.    The REAL ID Act requires evidence of lawful status which can be demonstrated, for example, by "valid documentary evidence that the person is a citizen or national of the United States [or] is an alien lawfully admitted for permanent or temporary residence in the United States [or] has an approved application for asylum in the United States [or] has entered into the United States in refugee status." § 202(c)(2)(B). A State must verify the validity and completeness of the evidence of lawful status or presence by contacting the issuing agency. § 202(c)(4)(A); 6 C.F.R. § 37.13(b)(3).

19.    The State must also confirm the applicant's social security number. § 202(d)(5); 6 C.F.R. § 37.13(b)(2).

20.    In sum, an applicant meeting the Act's requirements should receive a REAL ID-compliant state driver's license or identification card.

21.    The READ ID Act does not prescribe a minimum age to obtain a driver's license or identification card. Nor does the Act prescribe documentation sufficient to support a minor's application for a driver's license or identification card.

**B.**    **The Department of Public Safety and Corrections Establishes Rules for Issuance of a Driver's License or Identification Card to a Minor**

22.    Louisiana issues driver's licenses that are compliant with the REAL ID Act. La. R.S. § 32:410(E).[2]

23.    A minor who is 14 years and 9 months and is in the eighth grade or higher can apply for a Class "E" temporary instructional permit. *Id*. at § 32:402.1 (D), (E).

24.    To be eligible, consistent with the REAL ID Act, the minor must provide documentation evincing her:

a) full name;

b) current mailing address;

c) residential address; and

d) identifying information showing, *inter alia*,

    i)  date of birth, weight, height, eye color,

    ii)  social security number,

    iii) proof of Louisiana residency, such as a utility bill or bank

---

[2] While the REAL ID Act is in effect in Louisiana, individuals who do not have REAL ID-compliant driver's license or identification card have until May 2025 to do so. *See* Louisiana Office of Motor Vehicles, *Are you REAL ID ready?*, https://www.expresslane.org/drivers/personal-driver-s-licenses/real-id/ (last visited October 12, 2023) (notifying Louisiana residents of the "need to present READ ID compliant license/ID or another acceptable form of identification, for accessing federal facilities, entering nuclear power plants, and boarding commercial aircraft" beginning May 7, 2025).

statement,

iv)  birth certificate, and

v)   permanent resident alien card issued after July 1, 1997.

*Id*. at § 32:409.1(A)(2).

25.    The minor must also present documentation verifying school attendance. *Id*. at § 32:431.1(B).

26.    Upon successful completion of a driver's education course or driving training program, and passage of a road knowledge test and a visual examination, a minor who is 15 but less than 17 years may be issued a Class "E" learner's license.

27.    The Class "E" learner's license authorizes the minor "to drive while being accompanied by a licensed parent, guardian, adult at least age twenty-one or older or a licensed sibling at least age eighteen or older." *Id.* at § 32:407(A)(2)(a). The statute also sets forth the requirements for a minor to obtain an intermediate license before age 17 and a full Class "E" license thereafter. *Id.* at § 32:407(3), (5); § 32:422.

28.    The minor's application must be signed by a parent who has legal custody. *Id*. at 32:407(A)(1).

29.    An applicant—minor or adult—denied a driver's license "for any cause … shall have a right of action." *Id*. at § 32:419.

**C.**     **The OMV's  Policy and Practice Discriminates Against U.S.-born and Lawfully Present Minors Because of Parental Alienage, National Origin, and/or Immigration Status**

30.     The Office of Motor Vehicles ("OMV") policies require a first-time applicant (minor or adult) for a driver's license or identification card to show proof of identification by providing one primary and two secondary documents. The primary document can be a U.S. state or territory-issued birth certificate or a U.S. passport. The secondary documents can include a social security card, Louisiana middle or high school identification card, health insurance card or school records. OMV Issuance of Driver's License, Section 1, Policy 6.00; Policy 19.00.

31.     Proof of residence can be established with a utility bill, an unexpired driver's license or identification card issued to a minor's parent, the minor's school transcript, or other documents. OMV Policy 3.04.

32.     At the time of the application, a minor's parent "must be present and provide his/her Louisiana driver's license, permit or identification card in person." *Id*.

33.     The minor's parent must also verify his or her identity by, *inter alia*, presenting a foreign passport that is "appropriately stamped and accompanied by proper immigration documents" or a Louisiana driver's license or identification card. OMV Policy 6.00.

11

34.    The OMV application for a driver's license or identification card, which a minor and her parent must complete and sign, requires the parent to present an "ID" or "DL."[3]

35.    The OMV policy mandating a parent's U.S. driver's license or identification card as sole proof of identity to co-sign a minor's application has a discriminatory effect. It renders U.S. citizens and lawfully present minors ineligible for a Louisiana temporary instructional permit, intermediate license, driver's license, or identification card (collectively "driver's license") when their immigrant parents do not have and cannot obtain a U.S. driver's license or identification card. The OMV's discriminatory policy and practice is implemented under the aegis of the DPS&C.

## STATEMENT OF FACTS

### S.M.

36.    S.M. is a 16-year-old junior at a Plaquemines Parish Public School.

37.    S.M. was born in New Orleans, Louisiana, in 2007. She lives in Plaquemines Parish with her immigrant parents who are of Honduran nationality.

---

[3] Louisiana Department of Public Safety and Corrections, Office of Motor Vehicles Application for License or Identification Card is available at https://public.powerdms.com/LADPSC/documents/347026 (last visited October 14, 2023).

38.    On June 5, 2023, S.M. appeared for a scheduled driver's license appointment at the Louisiana OMV, 2150 Westbank Expressway, Harvey.

39.    At the OMV counter, S.M. presented her U.S. birth certificate endorsed by then state registrar Darlene W. Smith. The birth certificate listed Mario Rene Mendoza as S.M.'s father.

40.    To verify her father's identity, S.M. provided his unexpired Honduran passport issued January 2021 and set to expire ten years later in 2031.

41.    S.M. also presented her original social security card issued September 17, 2007; her school identification card; and an electric utility bill.

42.    The OMV staff to whom S.M. gave her documents, asked for her father's driver's license or ID.

43.    S.M. informed the OMV staff that her father did not have a driver's license or ID.

44.    S.M. informed the OMV staff that her older siblings have driver's licenses and inquired if one of them could stand in her father's stead.

45.    The OMV staff told S.M. that he needed to consult with his supervisor. When the OMV staff returned from his consultation, he gave S.M.'s documents back to her, telling her to "come back when [she] turns 18."

46.    The OMV staff also told S.M. that only a parent could co-sign an application for a driver's license or ID.

47.    The OMV staff gave S.M. a form marking that her application for a driver's license or ID "has been rejected [because a] parent must hold valid ID or DL." The form also noted that a birth certificate and a social security card were required without clarifying whether these were for S.M.'s father.

48.    The OMV did not provide S.M. with notice informing her of her right to file an appeal or seek review of the denial.

49.    Between May 12 and June 5, 2023, S.M. visited three OMV offices where she was repeatedly told that she is ineligible for a driver's license because her father does not possess a driver's license or ID. S.M.'s father does not have and cannot obtain a U.S. driver's license or ID because he does not meet the requisite immigration status.

50.    S.M. is aware that both her older siblings were rejected and did not obtain a driver's license until they turned 18 because the OMV routinely rejects U.S.-born and lawfully present minors whose immigrant parents do not have a U.S. driver's license or ID.

51.    S.M. needs a driver's license to drive herself to school for classes and after-school activities, to secure a part-time job so that she can help her family

meet their financial needs, and to assist her family with driving related responsibilities.

**K.G.**

52.    K.G. is a 15-year-old sophomore at a charter high school in Orleans Parish.

53.    K.G. was born in New Orleans, Louisiana, in 2007. She lives in Orleans Parish with her immigrant parents who are of Guatemalan nationality, and with her siblings.

54.    On May 24, 2023, K.G. appeared with her father and elder sibling for a scheduled appointment at the Louisiana OMV, 100 Veterans Boulevard, New Orleans.

55.    At the counter, K.G.'s father presented K.G.'s U.S. birth certificate issued June 20, 2022, and endorsed by state registrar Devin George, listing Angel Luciano Gonzalez, born in Guatemala, as her father.

56.    To establish his relationship to K.G. and to verify his identity, K.G.'s father provided his unexpired Guatemalan passport issued December 5, 2019, with an expiration date of December 4, 2024.

57.    K.G.'s father also presented K.G.'s U.S. passport issued July 27, 2022, with an expiration date of July 26, 2027; original social security card issued

July 31, 2012; school ID; Louisiana Department of Health Medicaid card issued April 23, 2018; a sewerage and water bill; and an electric bill.

58.    The OMV staff to whom the documents were provided told K.G.'s father that K.G. must wait until she turns 18 to apply for a temporary instructional permit because he does not have a driver's license, state ID or a document proving his legal presence. K.G.'s father does not have and cannot obtain a U.S. driver's license or ID because he does not meet the requisite immigration status.

59.    The OMV did not provide K.G. with notice informing her of her right to file an appeal or seek review of the denial.

60.    K.G. needs a driver's license to drive herself and her siblings to school and engage in after-school activities, and to help her family with driving related responsibilities.

**Elvis Nunez**

61.    Elvis Nunez is an 18-year-old freshman at a college in Iowa.

62.    Elvis' permanent residential address is in St. Tammany Parish, where he lives with his siblings and his father, who is an immigrant of Honduran nationality.

63.    Elvis  was born in Honduras. He was issued a permanent resident card on December 18, 2015, with an expiration date ten years later on December 18, 2025.

64.    In or about June 2022, Elvis completed an in-class driving program at the Victor Manning Driving School in Metairie, Louisiana. Elvis could not take the written test for the in-class course or participate in the road instruction component of the driving program because he did not have a learner's permit. The Victor Manning Driving School issued him a certificate with which to obtain a permit from the OMV.

65.    In or about June 2022, Elvis, who was a minor at the time, went with his father to the OMV at 100 Veterans Boulevard, New Orleans. The OMV staff with whom they met told them that Elvis was ineligible for a learner's permit because his father did not have a driver's license or ID.

66.    In or about January 2023, after Elvis turned 18, again, he went to the 100 Veterans Boulevard OMV office. Elvis presented his unexpired permanent resident card; social security card issued July 13, 2016; 11th grade high school transcript; unexpired Honduran passport; and Honduran birth certificate.

67.    This time, the OMV rejected his application because he "looked young" on his permanent resident card.

68.     The OMV did not provide Elvis with notice informing him of his right to file an appeal or seek review of the denial.

69.     Elvis secured federal financial aid, registered for classes, and obtained housing at the college he attends in Iowa with the same permanent resident card and other documents he presented to the OMV.

70.     Elvis needs a driver's license to get a job so that he can help support his family financially when he is home from college. Elvis does not want to risk losing his permanent resident card by carrying it with him at all times. He also worries that if he is stopped and questioned as a passenger in a vehicle he risks being arrested for not having a driver's license or state ID.

**Asociación de Familias Unidas En Acción ("FUA")**

71.     Founded in 2018, Asociación de Familias Unidas en Acción ("FUA") is an immigrant-led grassroots community organizing and advocacy organization with a principal place of business in New Orleans. FUA's mission is to empower immigrant communities through direct aid, organizing, and education to create societal transformation.

72.     FUA is a member-based organization. Members join by signing a membership list. FUA has approximately 250 active members. Members attend

weekly meetings, participate in education workshops, and complete about 8 hours of volunteer work. S.M. and K.G.'s households are members of FUA.

73.    FUA organizes on issues that impact Latino and other immigrant communities across Louisiana, including access to driver's license, health care, food instability, immigration, employment, housing, and climate change. FUA provides educational opportunities for its members to learn about their rights and organize to address systemic issues that they face. FUA also organizes cultural events, educational fairs, and community cleanup activities.

74.    FUA assists its members and the wider community in obtaining employment by facilitating access to workshops in industries including culinary, landscaping, and cosmetology. FUA also provides shelter and supportive services for recently arrived families, assists families in obtaining temporary housing, employment, and food, and ensuring school enrollment for children. FUA also offers English language classes. FUA has about twelve individuals who volunteer and staff its programs.

75.    In or around 2019, through weekly meetings with its members, FUA learned that U.S.-born children and otherwise lawfully present minors were being denied the opportunity to apply for driver's licenses, permits, and identification cards because the OMV has a policy and practice of requiring immigrant parents to

show a U.S. driver's license or identification card. FUA also learned that Spanish-speaking parents and their U.S.-born and lawfully present children are turned away by OMV because they are presumed ineligible based on nationality.

76.    FUA members expressed their worry, despair, and helplessness at their U.S.-born and lawfully present children's inability to drive to the grocery store, pick up prescriptions at the local pharmacy, or secure employment to help support their families' financial needs.

77.    In response to the denial of driver's license identified by its members, FUA created a Driver's License for All Campaign. The campaign aims to improve public safety, grow the local economy, and keep families together by advocating for driver licenses for all Louisianas regardless of immigration status. As part of this campaign, FUA has organized community meetings, met with business groups and faith-based organizations, and organized public events to heighten attention to the campaign.

78.    To meet the immediate needs of members whose U.S.-born and lawfully present children cannot obtain driver's licenses because of the OMV's discriminatory policy and practice, FUA coordinates carpools and taxi rides for members and their children so that they can participate in FUA related activities.

FUA's volunteers also drive families to OMV offices to apply for driver's licenses, permits, and identification cards.

79.    To meet the needs of its members whose U.S.-born and lawfully present children cannot obtain driver's licenses and identification cards because of the OMV's discriminatory policy and practice, FUA has had to divert resources away from its mission-related work, including its Driver's License for All Campaign, maintaining inventory and picking up donations for its food bank, facilitating employment workshops, providing shelter and supportive services, and offering English language classes. The OMV's discriminatory policy and practice frustrates FUA's ability to further its core mission.

80.    Upon information and belief, FUA's members and immigrant communities across the state of Louisiana are impacted by the OMV's discriminatory policy and practice.

81.    Upon information and belief, the OMV and/or the DPS&C received and/or continues to receive federal financial assistance to comply with the requirements of the REAL ID Act.

**The OMV's Discriminatory Policy and Practice Denies Plaintiffs and the Putative Class A Necessary Credential for Gaining Access to Activities of Daily-living**

82.    In Louisiana, about 30% of parishes—18 out of 64—operate a public transportation system.[4] In the roughly 70% of parishes with scarce public transit, getting to school, work, religious service, the pharmacy, or grocery store is arduous for Plaintiffs and the putative class they represent because they do not have driver's licenses and cannot drive.

83.    The OMV's discriminatory policy and practice, implemented under the aegis of the DPS&C, deprives Plaintiffs and the putative class of a necessary credential for gaining independence, supporting themselves, assisting their families financially, attending school and extra curricula activities, attending religious activities, visiting relatives, and engaging in normal activities of daily living.

84.    The OMV's discriminatory policy and practice impedes access to a familiar rite of passage for Plaintiffs and the putative class. It also worsens their commuting times to school. For members of the class who live in New Orleans, for example, the average travel time for a student to get to school by public transit is

---

[4] *See* Victor Skinner, *Public transit use in Louisiana trails the national average*, available at https://neworleanscitybusiness.com/blog/2023/01/30/public-transit-use-in-louisiana-trails-the-national-average/ (last visited October 14, 2023).

47 minutes, compared to 14 minutes by car.[5] For Plaintiffs and the putative class,

not having a driver's license is immobilizing.

## CLASS ACTION ALLEGATIONS

85.    Plaintiffs bring this putative action on behalf of themselves and all

those similarly situated, pursuant to Federal Rules of Civil Procedure 23(a),

23(b)(2).

86.    The class is defined as:

> All minors ages 14 to 17, residing in Louisiana who are U.S. citizens
> or lawfully present and are eligible to apply for a temporary
> instructional permit, intermediate license, driver's license, or
> identification card (collectively "driver's license") but are denied the
> right to so apply because their parents or legal guardians lack a U.S.
> driver's license or identification card.

87.    The precise size of the class is unknown but likely exceeds three

hundred minors. Plaintiffs' estimate is derived from U.S. Census data and an

American Immigration Council report. According to the U.S. Census, as of 2021,

14,868 children of Hispanic/Latino ancestry were enrolled in grades 9-12 in

---

[5] *See* Jane Arnold Lincove & Jon Valant, *New Orleans Students Commute Times by Car, Public Transit and School Bus*, available at
https://educationresearchalliancenola.org/files/publications/new_orleans_students_commute_times_by_car_public_transit_and_school_bus.pdf

Louisiana Public Schools.[6] The American Immigration Council estimates that 2 percent of U.S.-born children live with at least one undocumented family member.[7] Extrapolating from both data, Plaintiffs estimate that approximately 300 high schoolers of Hispanic/Latino ancestry alone are impacted by Defendants' discriminatory policy and practice. Because the estimate does not include impacted class members from Asian American, Black, White or other racial and ethnic backgrounds, the number of class members is likely substantially understated.[8]

88.     Plaintiffs and members of the putative class are geographically dispersed throughout Louisiana, are likely of low-income status, and do not possess the resources necessary to litigate individual cases. Joinder is also impracticable as the proposed class will fluctuate each year when 17-year-olds inevitably turn 18 and cease to be subject to the OMV's discriminatory policy and practice. Class members are also unaware of their legal rights, and their immigrant

---

[6] United States Census Bureau, 2021-ACS-1-Year Estimate Detailed Tables, B14007I, *School Enrollment by Detailed Level of School For the Population 3 Years and Over ("HISPANIC or LATINO")*.

[7] American Immigration Council, *New Americans in Louisiana*, available at https://map.americanimmigrationcouncil.org/locations/louisiana/# (last visited October 14, 2025).

[8] For example, about 3,000 Asian American students are enrolled in grades 9-12 in Louisiana Public Schools. *See* United States Census Bureau, 2022-ACS-1-Year Estimate Detailed Tables, B14007D, *School Enrollment by Detailed Level of School For the Population 3 Years and Over ("ASIAN ALONE")*.

parents or legal guardians' ability to vindicate those rights are hampered by language and economic barriers, making a class action the superior and most economical means of resolving the questions of law and fact common to the claims of the class.

89.    There are questions of law and fact common to the class including:

i)   Whether Defendants' policy and practice denying U.S. citizens and lawfully present minors' applications for a driver's license because their parents or legal guardians lack a U.S. driver's license or identification card violates the Equal Protection Clause on account of alienage, national origin, and/or immigration status;

ii)   Whether Defendants' policy and practice denying U.S. citizens and lawfully present minors' applications for a driver's license because their parents or legal guardians lack a U.S. driver's license or identification card violates Title VI of the Civil Rights Act of 1964 on account of national origin;

iii)  Whether Defendants' policy and practice denying U.S. citizens and lawfully present minors' applications for a driver's license without affording them notice and an opportunity to be heard violates the Due Process Clause of the Fourteenth Amendment; and

iv)  Whether Defendants' policy and practice denying U.S. citizens and

lawfully present minors' applications for a driver's license without affording

them notice and an opportunity for review violates La. R.S. § 32:419.

90.    These claims are typical of the claims of the class. Defendants deny

otherwise eligible U.S. citizens and lawfully present minors the right to apply for a

driver's license because their immigrant parents lack such identity documents, and

fail to provide them with notice and opportunity to be heard. Defendants'

discriminatory and unlawful policy and practice apply with equal force to all

members of the putative class.

91.    Plaintiffs will fairly and adequately represent the interests of all

members of the proposed class because they seek relief for themselves and on

behalf of the class as a whole and have no interest antagonistic to other members of

the class. Plaintiffs, like members of the putative class, have been subjected to

Defendants' discriminatory and unlawful policy and practice. Plaintiffs and the

putative class members seek a declaration that Defendants' policy and practice is

unconstitutional, violates state statutory law, and that Defendants be required to

issue driver's licenses to which they are lawfully entitled.

92.    Plaintiffs and the putative class will fairly and adequately be

represented by their counsel. LatinoJustice PRLDEF has litigated many

groundbreaking civil rights cases and has substantial expertise in class action litigation, including *Caban Gonzalez, et al. v. Moore, et al.*, (N.D. Ga. 2019), in which LatinoJustice successfully secured resolution requiring the Georgia Department of Driver Services to implement regulatory changes affording reciprocity to holders of driver's licenses from Puerto Rico and other U.S. territories. Local counsel Matthew Vogel also has extensive experience with complex immigrant rights and criminal defense litigation, including immigrant rights class action cases across the country.

93.     Defendants have acted and will act on grounds generally applicable to the class in denying otherwise eligible U.S. citizen and lawfully present minors the right to apply for a driver's license because their immigrant parents lack such identity documents and in failing to provide them with notice and opportunity to be heard.

## CAUSES OF ACTION

### COUNT ONE
**Violation of Equal Protection Clause Under the Fourteenth Amendment;**
**42 U.S.C. § 1983**

94.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 93 of the Complaint as though fully set forth herein.

95.     Plaintiffs, for themselves and on behalf of the putative class, assert a claim pursuant to 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

96.     Under the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

97.     Defendants have and enforce a policy and practice of denying otherwise eligible U.S. citizens and lawfully present minors' application for a temporary instructional permit, intermediate driver's license, driver's license, or identification card (collectively "driver's license") because their immigrant parents lack a U.S. driver's license or identification card.

98.     Defendants' policy and practice impermissibly discriminate against Plaintiffs and class members—all of whom are either U.S. citizens or are currently authorized by the federal government to be present in the United States—on the basis of parental alienage, national origin, and/or immigration status.

99.     Defendants' policy and practice impermissibly treats Plaintiffs and the putative class—who are similarly situated to other U.S. citizens and lawfully present youths—differently on account of parental alienage, national origin, and/or immigration status.

100.   At all relevant times, Defendants acted under color of state law.

101.   By subjecting Plaintiffs and members of the putative class to a discriminatory policy and practice, Defendants deny them equal protection of the law on account of alienage, national origin, and/or immigration status in violation of the Equal Protection Clause.

102.   Defendants' policy and practice is not rationally related to any legitimate state interest.

103.   Defendants' policy and practice is not narrowly tailored to further a compelling state interest.

104.   Defendants' policy and practice denies Plaintiffs and class members equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.

**COUNT TWO**
**Violation of Due Process Under the Fourteenth Amendment;**
**42 U.S.C. § 1983**

105.   Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 93 of the Complaint as though fully set forth herein.

106.   Plaintiffs, for themselves and on behalf of the putative class, assert a claim pursuant to 42 U.S.C. § 1983 for violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

107.    The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty or property without due process of law." U.S. CONST. amend. XIV.

108.    Fundamental due process requires notice and an opportunity to be heard for deprivation of a protectable liberty or property interest.

109.    Defendants enforce a policy and practice of not affording notice and an opportunity for a hearing to U.S. citizens and lawfully present minors whose applications for driver's licenses are denied because their immigrant parents lack a U.S. driver's license or identification card.

110.    At all relevant times, Defendants acted under color of state law.

111.    By arbitrarily and discriminatorily rejecting Plaintiffs' applications for driver's licenses when they have furnished requisite identity documents and parental consent and by failing to afford them notice and an opportunity for a hearing, Defendants violate the Due Process Clause.

## COUNT THREE
### Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; 42 U.S.C. § 1983

112.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 93 of the Complaint as though fully set forth herein.

113.   Plaintiffs, for themselves and on behalf of the putative class, assert a claim pursuant to Title VI of the Civil Rights of 1964, 42 U.S.C. § 2000d, and pursuant to 42 U.S.C. § 1983.

114.   Under 42 U.S.C. § 2000d, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

115.   Defendants have and enforce a policy and practice of denying otherwise eligible U.S. citizens and lawfully present minors' applications for a driver's license because their immigrant parents lack a U.S. driver's license or identification card.

116.   Defendants' policy and practice impermissibly discriminates against Plaintiffs and class members—all of whom are either U.S. citizens or are currently authorized by the federal government to be present in the United States—on the basis of parental national origin.

117.   Defendants' policy and practice impermissibly treats Plaintiffs and the putative class differently or worse than similarly situated U.S. citizens and lawfully present youths on account of parental national origin.

118.    Defendants enforce their policy and practice with the intent to discriminate against, with deliberate indifference to, or with reckless disregard for the rights of Plaintiffs and members of the putative class.

119.    Defendants enforce a deliberate policy and practice of failing to issue driver's licenses and identification cards to Plaintiffs and members of the putative class who meet the requirements of the REAL ID Act.

120.    At all relevant times, Defendants received or continues to receive, directly or indirectly, federal grant money to assist them in complying with the requirements of the REAL ID Act. Defendants acted under color of state law.

121.    By subjecting Plaintiffs and members of the putative class to a discriminatory policy and practice, Defendants, on the ground of national origin, exclude Plaintiffs and members of the class from participation in, deny them the benefit of, and subject them to discrimination in receipt of a benefit conferred under a program or activity receiving federal financial assistance.

## COUNT FOUR
### Violation of La. R.S. § 32:419

122.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 93 of the Complaint as though fully set forth herein.

123.    Plaintiffs, for themselves and on behalf of the putative class, assert a claim pursuant to La. R.S. § 32:419, which provides that an applicant for a license

whose application is rejected "for any cause... shall have a right of action in the same manner as is provided by R.S. § 32:414 of [the Driver's License Law]."

124.    Defendants enforce a policy and practice of not affording notice and an opportunity for a hearing to U.S. citizens and lawfully present minors whose applications for a driver's license are rejected.

125.    By arbitrarily and discriminatorily rejecting Plaintiffs' applications for a driver's license when they have furnished requisite identity documents and parental consent and by failing to afford them notice and an opportunity for a review, Defendants violate La. R.S. § 32:419.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the class they seek to represent, request that the Court:

a)    Assume jurisdiction over this matter;

b)    Certify this matter as a class action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure;

c)    Appoint counsels as class counsel pursuant to Rule 23(g);

d)    Declare that Defendants' policy and practice of denying otherwise eligible U.S. citizens and lawfully present minors' applications for a driver's license because their immigrant parents lack a U.S. driver's license or

33

identification card unconstitutional in violation of the Equal Protection Clause of

the Fourteenth Amendment;

e)    Declare that Defendants' policy and practice of denying otherwise

eligible U.S. citizens and lawfully present minors' applications for a driver's

license because their immigrant parents lack a U.S. driver's license or

identification card violates Title VI of the Civil Rights Act of 1964;

f)    Declare that Defendants' policy and practice of not affording notice

and an opportunity for a hearing to U.S. citizens and lawfully present minors

whose applications for driver's licenses are denied violates the Due Process Clause

of the Fourteenth Amendment;

g)    Declare that Defendants' policy and practice of not affording notice

and an opportunity for a review to U.S. citizens and lawfully present minors whose

applications for driver's licenses are rejected violates La. R.S. § 32:419.

h)    Issue a preliminary injunction, later to be made permanent, requiring

that Defendants (i) cease rejecting Plaintiffs and class members' applications for

driver's licenses; (ii) accept unexpired foreign passports and other such documents

of Plaintiffs' and class members' immigrant parents as sufficient to co-sign

applications for driver's licenses; (iii) issue forthwith driver's licenses to otherwise

eligible Plaintiffs and class members; (iv) afford notice and opportunity for a

hearing to U.S. citizen and lawfully present minors whose applications for a driver's license are denied or rejected for any cause; and v) cease discriminating on account of alienage, national origin, and/or immigration status;

      i)     Grant Plaintiffs and the putative class their reasonable costs of suit, reasonable attorney's fees, and any other expenses pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920, and as otherwise permitted by law; and

      j)     Grant such other relief as this Court may deem just and proper.

Dated this 16th day of October, 2023
Baton Rouge, LA

Respectfully submitted,

/s/ Francisca D. Fajana
Francisca D. Fajana (NY # 5475405)*
Rafaela Uribe (NY # 6073332)*
LATINOJUSTICE PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
Tel: 212.219.3360
Fax: 212.739.7507
FFajana@latinojustice.org
RUribe@latinojustice.org
* Pro Hac Vice Application Forthcoming

/s/ Matthew S. Vogel
Matthew S. Vogel†
Louisiana Bar No. 35363
NATIONAL IMMIGRATION
PROJECT OF THE NATIONAL
LAWYERS GUILD (NIPNLG)
2201 Wisconsin Ave, NW, Ste. 200
Washington, DC 20007
Tel: 504.569.5650
Fax: 617.227.5495
matt@nipnlg.org
†Not admitted in DC; working remotely from and admitted in Louisiana only.