# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

|  |  |
|---|---|
| S.M., by Next Friend MARIO RENE MENDOZA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JAMES M. LEBLANC, Secretary of the Louisiana Department of Public Safety and Corrections, in his official capacity, et al., <br><br> Defendants. | Civil Action No. 3:23-cv-01499-BAJ-SDJ |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. FACTS ......................................................................................................................... 1

III. ARGUMENTS ............................................................................................................. 3

   A.   The Moving Plaintiffs Satisfy the Requirements of Rule 23 for Class Certification. ........ 3

      1.   The Proposed Class is So Numerous As to Make Joinder Impracticable. .................... 5

      2.   Significant Questions of Law and Fact Are Common to the Class. ............................ 6

      3.   The Moving Plaintiffs' Claims Are Typical of All Class Members' Claims. .............. 9

      4.   The Moving Plaintiffs Will Fairly and Adequately Protect the Interests of the Class. .. 13

   B.   The Moving Plaintiffs' Proposed Class Meets the Requirements of Rule 23(b)(2). ........ 17

IV. CONCLUSION ............................................................................................................ 19

## TABLE OF AUTHORITIES

**Cases**

*Alvarez v. LaRose*, No. 2:21-cv-13117 (S.D. Cal.) ................................................. 15

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................ 14, 18

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) ....................... 4

*Austin Sanctuary Network v. Mayorkas,* 2022 WL 4356732 (S.D.N.Y. Sept. 19, 2022) ....... 16

*Barry v. Corrigan*, 79 F.Supp.3d 712 (E.D. Mich. 2015) ....................................... 2

*Black Love Resist in the Rust v. City of Buffalo N.Y.*, 334 F.R.D. 23 (W.D.N.Y. 2019) ........ 16

*Boston Parents Coalition for Academic Excellence Corp. v. School Committee for City of Boston*,
89 F.4th 46 (1st Cir. 2023) ................................................................. 15

*Caban Gonzalez, et al. v. Moore, et al.*, No. 1:19-cv-030345 (N.D. Ga. 2019) .................... 15

*Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996) ....................................... 4

*Coreas v. Bounds*, No. 8:20-cv-00780 (D. Md.) ................................................. 15

*Cunya, et al., v. Sage, et al.*, No. 2:18-cv-06405 (E.D.N.Y. 2018) ............................. 15

*Dada v. Witte*, No. 1:20-CV-00458 (W.D. La.) ................................................. 15

*Dockery v. Fischer*, 253 F.Supp.3d 832 (S.D. Miss. 2015) ..................................... 7

*East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395 (1977) .................... 14

*Estevez v. Berkeley College,* 2022 WL 16843460 (2d Cir. 2022) .............................. 15

*Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125 (5th Cir. 2005) ................................. 13

*Flanagan v. Ahearn (In re Asbestos Litig.)*, 90 F.3d 963 (5th Cir. 1996) ...................... 10

*Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478 (1978) ................................... 18

*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982) ........................... 10, 14

*Ibe v. Jones*, 836 F.3d 516 (5th Cir. 2016) ................................................. 9, 14

*Immig. Defenders Law Ctr. v. Mayorkas*, No. CV 20-9893 (C.D. Cal.) ........................ 15

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) .................................... 4, 7, 9

*In re Monumental Life Ins. Co.,* 365 F.3d 408 (5th Cir.2004) ................................. 6

*In re Seitel, Inc. Sec. Litig.*, 245 F.R.D. 263 (S.D. Tex. 2007) ............................... 14

*Intercommunity Justice & Peace Center v. Registrar, Ohio Bureau of Motor Vehicles*,
404 F.Supp.3d 877 (S.D. Oh. 2020) ........................................................ 12

*Jenkins v. Raymark Indus. Inc.*, 782 F.2d 468 (5th Cir. 1986) ............................... 9

*Jones v. Diamond*, 519 F.2d 1090 (5th Cir. 1975) ........................................................ 18

*Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421 (5th Cir. 1997) ............................ 10

*Ligon v. City of New York*, 288 F.R.D. 72 (S.D.N.Y. 2013) ...................................... 16

*Lopez v. NYC Dept. of Homeless Services,* 2019 WL 3531955 (S.D.N.Y. Aug. 2, 2019) .......... 16

*Lozano v. City of Hazleton*, 496 F.Supp.2d 477 (M.D. Pa. 2007) ................................ 6

*M.D. v. Perry*, 294 F.R.D. 7 (S.D. Tex. 2013) ...................................................... 7

*Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521 (5th Cir. 2007) .......................... 18

*McManus v. Fleetwood Enterprises, Inc.*, 320 F.3d 545 (5th Cir. 2003) ........................ 3

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) .................. 5, 10

*Oldaker v. Giles,* No. 7:20-cv-00224 (M.D. Ga.) .................................................. 15

*Penson v. Terminal Transp. Co., Inc.*, 634 F.2d 989 (5th Cir. 1981) .......................... 18

*Plaintiffs ##1-21 v. County of Suffolk*, 2021 WL 1254408 (E.D.N.Y. Apr. 5, 2021) ................ 16

*Santos Garcia v. Mayorkas*, 1:20-cv-00821 (E.D. Va.) .......................................... 15

*Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408 (5th Cir. 2017) .............................. 13

*Soc'y of the State of New York v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138 (S.D.N.Y. 2019) ........ 2

*Stirman v. Exxon Corp.*, 280 F.3d 554 (5th Cir. 2002) ........................................ 9, 13

*Students for Fair Admissions, Inc. v. Harvard College,* 143 S. Ct. 2141 (2023) ........................ 15

*Thomas v. Haslam,* 329 F.Supp.3d 475 (M.D. TN 2017) ........................................ 15

*U.S. Navy SEALs 1-26 v. Austin*, 594 F.Supp.3d 767 (N.D. Tex. 2022) ...................... 4

*Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192 (N.D. Cal. 2012) .......................... 2

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...................................... 4, 6, 7, 17

*Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017) .................................................... 18

*Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. 1981) .......................... 5

## Statutes

42 U.S.C. § 2000d ................................................................................................ 3

Fed. R. Civ. P. 23(a) ............................................................................................ 3, 4

Fed. R. Civ. P. 23(a)(2) ...................................................................................... 6, 9

Fed. R. Civ. P. 23(a)(3) ........................................................................ 9, 13

Fed. R. Civ. P. 23(a)(4) ........................................................................ 13, 17

Fed. R. Civ. P. 23(b) .......................................................................... 3, 17

Fed. R. Civ. P. 23(b)(2) ............................................................ 4, 17, 18, 19

Fed. R. Civ. P. 26(a)(1) ................................................................... 5

Fed. R. Civ. P. 65(d) ...................................................................... 19

LAS-R.S. § 32:419 ........................................................ 3, 8, 9,   13

Title VI of the Civil Rights Act of 1964 ....................................   3, 8,   13

Title VII of the Civil Rights Act of 1964 ..........................................   15

## Other Authorities

Advisory Committee's Note, 39 F.R.D. 98 (1966) ............................................   18

Advisory Committee's Note, 39 F.R.D. 73 (1966) ............................................   18

## I.    INTRODUCTION

Plaintiffs S.M., K.G., E.B., S.T., and Asociación de Familias Unidas en Acción (FUA) (Moving Plaintiffs) bring this action on behalf of themselves, and all others similarly situated to challenge Defendants' unconstitutional policy and practice that denies Louisiana Temporary Instructional Permits (TIPs), driver's licenses, and state identification cards (collectively "driver's license") to U.S.-citizen and lawfully present minors because their immigrant parents lack a driver's license or state identification card.

Plaintiffs move for class certification to end Defendants' discriminatory policy and practice against them and members of the putative class they seek to represent.

## II.    FACTS

Plaintiffs S.M., K.G., and E.B. are U.S.-citizen minors, Louisiana residents, and high school students who are legally entitled to obtain a driver's license. *See* Ex. A (Mendoza Decl. ¶ 4); Ex. B (Gonzalez Decl. ¶ 3); Ex. C (Bonilla Decl. ¶ 3-4). Plaintiff S.T. is a Louisiana resident and lawful permanent resident who is legally entitled to obtain a driver's license. *See* Ex. D (Tamayo Decl. ¶ 3). However, unlike other U.S.-born Louisianian and lawfully present youth, they have either been rejected or will be denied the opportunity to obtain a driver's license because their immigrant parents lack a driver's license or identification card. *See* (Mendoza Decl. ¶¶ 13-15; 19); (Gonzalez Decl. ¶¶ 6-7; 10); (Bonilla Decl. ¶ 10)*;* (Tamayo Decl. ¶6).

Plaintiff FUA is a membership-based, nonprofit organization that organizes with immigrant parents to advocate on behalf of their children and provides resources to immigrant

1

households. *See* Ex E (Casildo Decl. ¶¶ 3, 5).[1] Members of FUA include households with U.S.-citizen and lawfully present minors who have been prohibited from obtaining a driver's license because immigrant parents lack a driver's license or state identification card. *Id*. at ¶¶ 7-8, 11-12; Ex F (Murphy Decl. ¶ 12). FUA's board members and volunteers have had to coordinate carpools and taxi rides to meet the transportation needs of members whose U.S.-citizen and lawfully present children have been denied the right to obtain a driver's license. *See* (Casildo Decl. *Id*. at ¶ 9). FUA also has had to divert resources away from its other work, such as it Driver's Licenses for all Campaign, maintaining, and delivering disbursements from its foodbank, facilitating employment workshops, providing temporary shelter, offering language classes, and cultural events. *Id*. at ¶ 14.

The Louisiana Office of Motor Vehicles ("OMV"), precludes an immigrant parent with an unexpired foreign identification document (such a passport) from co-signing their minor child's application for a driver's license. *See* Amended Complt. (ECF No. 18 at ¶ 37). The OMV's policy and practice, implemented under the aegis of the Department of Public Safety and Corrections, deprives the Moving Plaintiffs and all other similarly situated minors the right to obtain a driver's license on account of parental national origin and/or immigration status in violation of the Equal Protection Clause of the Fourteenth Amendment. Defendants'

---

[1] Plaintiff FUA has associational standing and can represent the putative class. *See e.g., Soc'y of the State of New York v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138 (S.D.N.Y. 2019) (certifying class with associational standing organizations as class representatives); *Barry v. Corrigan*, 79 F.Supp.3d 712, 731-733 (E.D. Mich. 2015) (finding nonprofit demonstrated associational standing and met the requirements to be class representative); *Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 204 (N.D. Cal. 2012) (organizations with associational standing may serve as class representatives and collecting cases). To the extent that the Amended Complaint, fn. 11 suggests otherwise, that was inadvertent error.

discriminatory policy and practice also violates Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d on the basis of national origin.

Further, Defendants' failure to afford notice and an opportunity to be heard to the Moving Plaintiffs and putative class members when their applications for a driver's license is denied, violates the Due Process Clause of the Fourteenth Amendment and La. R.S. § 32:419. Defendants' discriminatory policy and practice results in Moving Plaintiffs and thousands of young people in Louisiana being denied the ability to drive themselves to school and after-school activities, to find part-time work, to help support their families financially, to drive to the grocery store, pharmacy or religious activities, and to experience a rite of passage that is commonplace for so many teenagers. *See* (Mendoza Decl. ¶ 20); (Gonzalez Decl. ¶12); (Bonilla Decl. ¶ 12)*;* (Tamayo Decl. ¶ 9); (Casildo Decl. ¶ 13).

The proposed class that Moving Plaintiffs seek to represent consists of:

> All minors ages 14 to 17, residing in Louisiana who are U.S. citizens or lawfully present and are eligible to apply for a temporary instructional permit, intermediate license, driver's license, or identification card (collectively "driver's license") and have been denied the right to so apply because their parents or legal guardians lack a U.S. driver's license or identification card.

## III. ARGUMENTS

### A. The Moving Plaintiffs Satisfy the Requirements of Rule 23 for Class Certification.

A federal court may certify a class action if Plaintiffs fulfill the requirements of Federal Rule of Civil Procedure 23(a), as well as fit into one of the class subcategories of Rule 23(b). *McManus v. Fleetwood Enterprises, Inc.*, 320 F.3d 545, 548 (5th Cir. 2003). Members of a class seeking certification under Rule 23(a) must demonstrate that:

(1)    the class is so numerous that joinder of all members is impracticable,

3

(2)     there are questions of law or fact common to the class,

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Moving Plaintiffs seek certification under Rule 23(b)(2), which further requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

The decision to certify a class rests within the sound discretion of a district court. *See e.g., Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). In making a Rule 23(a) determination, the court conducts a rigorous analysis of the rule's prerequisites "look[ing] beyond the pleadings to understand the facts, claims, defenses, and applicable substantive law in order to make a meaningful determination on certification issues.*" U.S. Navy SEALs 1-26 v. Austin*, 594 F.Supp.3d 767, 775 (N.D. Tex. 2022) (citations omitted). Class certification requires consideration of the enmeshed legal and factual issues that comprise the plaintiff's cause of action. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). However, attempts to resolve the merits of the claims, at this stage of analysis, are generally not appropriate. *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014). Merit issues may be considered only to the extent that they are relevant to determining whether the requirements of Rule 23 have been satisfied. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

The Moving Plaintiffs satisfy the requirements of Rule 23(a) and Rule 23(b)(2). This Court should certify the class.

### 1. The Proposed Class is So Numerous As to Make Joinder Impracticable.

To certify a class under Rule 23(a), a plaintiff must first demonstrate the class is so numerous that joinder is impracticable. Fed. R. Civ. P. 26(a)(1). Ordinarily Plaintiff must provide "some evidence or reasonable estimate of the number of purported class members." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981). There is no definitive number of members that a class must have in order to meet the standard for numerosity in the Fifth Circuit, but a class of "100 to 150 members[] is within the range that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Several factors beyond the actual number of class members are relevant to the numerosity inquiry, including "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Mullen*, 186 F.3d at 624.

Thus, the critical inquiry is not the actual number of class members, but whether it is impracticable to join them all, given the totality of the circumstances. *Zeidman*, 651 F.2d at 1038. In *Mullen*, the Fifth Circuit found numerosity was satisfied where a class of 100-150 casino workers were identified in a negligence action. 186 F.3d at 624. The Court took into consideration the likelihood that members of the class were geographically dispersed due to the transient nature of employment in the gambling industry and the reluctance some members may feel to file individual actions for fear of workplace retaliation as factors that warranted a finding that the numerosity requirement had been satisfied. *Id*.

Here, Moving Plaintiffs easily exceed the numerical threshold approved in *Mullen*; the sheer size of the proposed class makes joinder impractical. According to Plaintiffs' expert retained to determine the number of U.S.-citizen youth in grades 9-12 in Louisiana living with at least one

unauthorized immigrant parent, there are 2,871 U.S.-citizen children alone residing with at least one unauthorized immigrant parent. *See* Ex. G (Van Hook Decl. ¶¶ 8-9).[2] Further, class members are likely dispersed across the sixty-four parishes of Louisiana and their joinder is therefore impracticable. Also, households with undocumented members tend to avoid contact with government officials due to fear of retaliation and the risk of immigration proceedings. *See e.g., Lozano v. City of Hazleton*, 496 F.Supp.2d 477, 507 (M.D. Pa. 2007) *aff'd in part, rev'd* 724 F.3d 294 (3rd Cir. 2013) (recognizing legitimate fears of undocumented immigrants who could be denied access to shelter, education, sustenance and subject to removal for participating in litigation).[3] Notwithstanding the putative class members' geographic disbursement and their immigrant parents' legitimate fears should they vindicate the rights of their children, all members of the class have identical claims that can be resolved through this class action. Because it is impractical to join all members of the putative class, the numerosity requirement has been met.[4]

### 2. Significant Questions of Law and Fact Are Common to the Class.

The commonality requirement of Rule 23(a)(2) is fulfilled when there is a showing of common questions of law or fact that pertain to the class. *Wal-Mart Stores*, 564 U.S. at 350. Commonality requires more than presentation of questions or factual assertions common to the

---

[2] The 2,871 putative class members do not include lawfully present minors residing with at least one unauthorized immigrant parent, which would make the estimated number of class members much higher.

[3] *See also* Mohamad Moslimani, *Around four-in-ten Latinos in U.S. worry that they or someone close to them could be deported*, Pew Research (2022) (noting that 80% of unauthorized immigrant Latinos "worry a lot about ... being deported.")

[4] In regard to ascertainability—an implicit numerosity requirement—the precise number of putative class members may not be ascertainable, in part, because the OMV does not maintain data on the number of minor applicants turned away under Defendants' challenged policy and practice. But, the Moving Plaintiffs need not precisely identify the exact number of putative class members in order for this Court to certify the class. *See In re Monumental Life Ins. Co.,* 365 F.3d 408, 415 (5th Cir.2004) (certifying class "although exact number of class members continuing to pay discriminatory premiums was unknown").

class, it requires the capacity of a class action to generate a common answer for a class-wide resolution. *Id*. "In order to determine whether there are common questions of law or fact, a court must trace the class claims and conclude that the common questions will resolve them without the need for additional extensive individualized inquiry." *M.D. v. Perry*, 294 F.R.D. 7, 28 (S.D. Tex. 2013). Members of a class need not share every fact in common, as long as the common question that links the members is dispositive of their claim and the claim arises from a single course of conduct and single theory of liability. *Id*. The principal requirement of the commonality inquiry is just one common contention that enables the class action "to generate common answers apt to drive the resolution of the litigation." *In re Deepwater Horizon*, 739 F.3d at 811. The "common answer" may relate to the existence of injurious effect or conduct, as long as that single common contention exists. *Id*.

Members of a class are more likely to be seen as having suffered from the same injury if their injury was the result of one act of injurious conduct, such as a state-wide policy. *Wal-Mart Stores*, 564 U.S. at 349-50. A policy or practice does not have to be formal or officially adopted and can be identified on the basis of custom, consistent practice, or deliberate indifference to a risk that not addressing it will lead to constitutional violations. *M.D.*, 294 F.R.D. at 26. Applying the Supreme Court's *Wal-Mart Stores* teachings, the Fifth Circuit, in *In re Deepwater Horizon*, found that despite diversity in the class members' economic injuries, commonality was satisfied. 739 F.3d at 810. The court reasoned that the class members who suffered different economic injuries due to a BP oil spill had common contentions as to whether BP had any liability and if negligence caused their injuries. *Id.* at 811. *See also*, *Dockery v. Fischer*, 253 F.Supp.3d 832, 854 (S.D. Miss. 2015) (finding commonality where plaintiffs alleged that policies and practices implemented by defendants violated their Eighth Amendment rights).

Here, too, the Moving Plaintiffs satisfy the commonality prong as they and the putative class members are subject to the same injurious conduct: the OMV policy and practice that prohibits them from obtaining a driver's license because their immigrant parents do not have a driver's license or state identification card. *See* (Mendoza Decl. ¶¶ 13-16; 19); (Gonzalez Decl. ¶¶ 6-7; 10); (Bonilla Decl. ¶¶ 10-11)*;* (Tamayo Decl. ¶6); Casildo Decl. ¶ 7-8, 11-12); Ex. F (Murphy Decl. ¶¶ 7-8, 10-12). Defendants' discriminatory policy and practice violates the Moving Plaintiffs' and the class members' right under the Equal Protection Clause. Defendants also fail in violation of the Due Process Clause of the Fourteenth Amendment and La. R.S. § 32:419, to afford notice and an opportunity to be heard to the Moving Plaintiffs and the putative class when their applications for a driver's license is denied. ECF No. 18, ¶¶ 50, 64, 93.

The questions of law and fact that arise from Defendants' injurious conduct and that are common to all putative class members include:

(1) Whether Defendants' policy and practice denying U.S.-citizen and lawfully present minors' applications for a driver's license because their parents or legal guardians lack a U.S. driver's license or identification card violates the Equal Protection Clause on account of alienage, national origin, and/or immigration status;

(2) Whether Defendants' policy and practice denying U.S.-citizen and lawfully present minors' applications for a driver's license because their parents or legal guardians lack a U.S. driver's license or identification card violates Title VI of the Civil Rights Act of 1964 on account of national origin;

(3) Whether Defendants' policy and practice denying U.S.-citizen and lawfully present minors' applications for a driver's license without affording them notice and an

opportunity to be heard violates the Due Process Clause of the Fourteenth Amendment; and

(4) Whether Defendants' policy and practice denying U.S.-citizen and lawfully present minors' applications for a driver's license without affording them notice and an opportunity for review violates LAS-R.S. § 32:419.

Determination by this Court of these issues would "generate common answers" without need for individualized inquiry, as these questions are at the heart of this challenge. *In re Deepwater Horizon*, 739 F.3d at 811. Because those "common answers" are "apt to drive the resolution of the litigation," Moving Plaintiffs have satisfied Rule 23(a)(2)'s commonality requirement. *Id*.

### 3. The Moving Plaintiffs' Claims Are Typical of All Class Members' Claims.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Like the commonality inquiry, typicality does not scrutinize the strength of the claims made – instead, it assesses the similarity of the legal and remedial theories behind the claims of representative parties. *See, Ibe v. Jones*, 836 F.3d 516, 528-29 (5th Cir. 2016) (quoting *Jenkins v. Raymark Indus. Inc.*, 782 F.2d 468, 472 (5th Cir. 1986)). Factual differences may not be fatal to a class with respect to typicality if the claims made by the representative parties share the same essential characteristics with the claims made by other class members. Claims arising out of a "similar course of conduct" sharing "the same legal theory" have satisfied the typicality requirement in the face of factual differences. *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). "The critical inquiry under the typicality requirement is whether the class representative's claims have the same 'essential characteristics' as those of the rest of the class." *Id*.

"The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Both are meant to assess whether the class representative's claims and the class's claims are interrelated enough to ensure that class action is an efficient mechanism and that the class's interests will be adequately protected during the process of litigation. *Id*. Typicality "focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997) (citing *Flanagan v. Ahearn (In re Asbestos Litig.)*, 90 F.3d 963, 976 (5th Cir. 1996)). The test for typicality "is not demanding." *Mullen,* 186 F.3d at 625.

The Moving Plaintiffs were all subjected to the same discriminatory policy and practice by the Defendants—namely, the denial of a driver's license because their immigrant parents lack a driver's license or state ID. Plaintiff S.M., a U.S.-citizen minor, applied for a driver's license with her father and next friend, Mario Mendoza, serving as a co-signer. *See* (Mendoza Decl. ¶¶ 4, 6-7). Even though Mr. Mendoza's unexpired Honduran passport was presented to verify his identity and co-sign S.M.'s application, the OMV denied S.M's application because Mr. Mendoza did not have a driver's license or state ID. *Id* at ¶¶ 7, 13-14. S.M. is yet to be issued a driver's license. She will again be subjected to Defendants' discriminatory policy and practice when she surrenders a temporary instructional permit that OMV recently issued to her and seeks to obtain a driver's license. *Id* at 19. At the time that S.M.'s application for a driver's license was denied, she was not given adequate notice, nor was she provided an opportunity to be heard regarding the denial. ECF No. 18, ¶ 50; (Mendoza Decl. ¶ 14).

Like S.M., Plaintiff K.G. is also a U.S.-citizen minor, who applied for a driver's license with her father and next friend, Angel Luciano Gonzalez, serving as a co-signer. See (Gonzalez

Decl. ¶¶ 3-4). Mr. Gonzalez presented an unexpired Guatemalan passport to verify his identity and to co-sign K.G.'s application. *Id*. at ¶ 5. The OMV denied K.G.'s application because Mr. Gonzalez did not have a U.S. license or state identification card. *Id.* at ¶ 7. Like S.M., K.G. is yet to be issued a driver's license. She will again be subjected to Defendants' discriminatory policy and practice when she surrenders the temporary instructional permit that the OMV recently issued to her and seeks to obtain a driver's license. *Id*. at ¶ 10. Like S.M., K.G., too, was not given notice when she was denied, nor was she provided an opportunity to be heard regarding the denial. ECF No. 18, ¶ 64; (Gonzalez Decl. ¶ 7).

Plaintiff E.B. is also a U.S.-citizen minor. *See* Bonilla Decl. ¶ 3. E.B. was dissuaded from applying for a driver's license because of Defendants' discriminatory policy and practice, which his mother and next friend, Jeny Rebeca Bonilla, learned about from an article published by Jambalaya News in April 2021. *Id*. at ¶¶ 6-10. The article detailed a change to the OMV rules that requires a parent to be legally present in the U.S. in order to co-sign a U.S.-citizen or lawfully present minor's application for a driver's license. *Id*. at ¶¶ 6-8. E.B.'s parent believes it would be futile for him to apply. *Id*. at ¶ 10.

Plaintiff S.T. is a lawful permanent resident minor who applied for a state identification card with his mother and next friend, Brenda Tamayo, serving as a co-signer. *See* Tamayo Decl. ¶ 4. Mrs. Tamayo presented an unexpired Honduran passport to verify her identity and to co-sign S.T.'s application. *Id*. at ¶ 5. The OMV denied S.T.'s application because his mother did not have a U.S. license or state ID. *Id*. at ¶ 6. S.T. was not given notice of the denial, nor was he provided an opportunity to be heard regarding the denial. ECF No. 18, ¶ 93; (Tamayo Decl. ¶ 6).

Plaintiff FUA's members also have been subjected to Defendants' discriminatory policy and practice. FUA members whose households include U.S.-citizen and lawfully present youth

11

have been prohibited from obtaining a driver's license because their immigrant parents or guardians lack a driver's license or state identification card. (Casildo Decl. ¶¶ 7-8, 11-12); (Murphy Decl. ¶ 12). The households of both S.M. and K.G.—named individual plaintiffs—are members of FUA. (Mendoza Decl. ¶ 3); (Gonzalez Decl. ¶ 13.) More pointedly, as recent as February 2024, FUA board member, Brenda Murphy, accompanied a U.S.-born minor, L.M., to an OMV field office in Kenner where his application for a driver's license was rejected because his mother did not have a Louisiana identification card. (Murphy Decl. ¶ 10). Board member Murphy is aware of many FUA households who are impacted by Defendants' discriminatory policy and practice. *Id*. at ¶ 12. Many of these impacted families are afraid to come forward to join this lawsuit because doing so would bring scrutiny to their immigration status. (Casildo Decl. ¶ 15).

Because FUA has associational standing and its claims on behalf of its members are typical of the claims asserted by the named individual plaintiffs and the putative class, FUA meets the typicality prong for class certification as well. *See United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 549, 551-58 (1996) ("[U]nion is the 'representative of employees aggrieved'[and] is a person who may sue on behalf of the 'persons similarly situated'"); *Intercommunity Justice & Peace Center v. Registrar, Ohio Bureau of Motor Vehicles*, 404 F.Supp.3d 877, 890 (S.D. Oh. 2020) (membership-based nonprofit "need only show, like the other named Plaintiffs, its claims are typical to that of the class."); *Med. Soc'y of the State of New York*, 332 F.R.D. at 152 ("the Court concludes [that] Rule 23 permits an association, the members of which fall within the definition of the proposed class, to serve as a class representative"); *In re Cincinnati Policing*, 209 F.R.D. 395, 398 (S.D. Ohio 2002); ("[t]he class claims these organizations assert are for injunctive and declaratory relief against alleged

practices of the [Defendant]; the participation of the organizations' individual members is not required."

Plaintiffs S.M., K.G., E.B., S.T., and FUA satisfy the typicality requirement of Rule 23(a)(3) because all of their claims arise from a "similar course of conduct." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). All of Moving Plaintiffs' claims and those of the putative class possess the same essential characteristics of the OMV denial of their applications for a driver's license because their immigrant parents lack a driver's license or state ID. Also typical is Defendants' denial of adequate notice and an opportunity to be heard. The legal theory underlying these claims is identical for all putative class members and the Moving Plaintiffs as it relies on whether the OMV's policy and practice violates the Equal Protection and Due Process Clauses, as well as Title VI of the Civil Rights Act of 1964, and LAS-R.S. § 32:419. The typicality requirement of Rule 23(a)(3) is thus met.

### 4. The Moving Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.

The adequacy requirement asks the party seeking certification to show that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The court must examine adequacy under a tripartite inquiry into "(1) 'the zeal and competence of the representative[s'] counsel'; (2) 'the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees'; and (3) the risk of 'conflicts of interest between the named plaintiffs and the class they seek to represent.'" *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017) (quoting *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005)).

Review under the adequacy standard serves to uncover conflicts of interest between named parties and the class they seek to represent. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591,

625–26 (1997). Class representatives must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).

The adequacy standard also imposes an obligation that class counsel possess a "sufficient level of knowledge and understanding to be capable of controlling or prosecuting the litigation." *Ibe v. Jones*, 836 F.3d 516, 529 (5th Cir. 2016). In assessing the adequacy of the class counsel, a court may consider the counsel's prior litigation experience and expertise. *In re Seitel, Inc. Sec. Litig.*, 245 F.R.D. 263, 273 (S.D. Tex. 2007).

Here, the interests of the Moving Plaintiffs and class members are entirely identical. The legal claims for the Moving Plaintiffs and FUA members arise from the same unconstitutional conduct that applies to all of the proposed class members. All have suffered the same injury and seek the same outcome of declaratory and injunctive relief to enjoin ongoing discrimination and to obtain a driver's license so that they can participate more fully in civic life. Additionally, all Plaintiffs aver their understanding of the issues challenged within this litigation and have declared their commitment to ensuring that young people across the state of Louisiana are able to access driver's licenses. *See e.g.* (Gonzalez Decl. ¶ 11); (Casildo Decl. ¶ 15). No conflict is created between Plaintiffs and other class members through this request for relief, and counsel for Moving Plaintiffs knows of no conflicts among or between members of the putative class, the named plaintiffs, or the attorneys in this action. The Moving Plaintiffs do not have any interests antagonistic to those of any other members of the proposed class.

As set forth in greater detail in counsel's curriculum vitae, (Ex. G), counsel for the named Plaintiffs have sufficient experience to competently represent the proposed class and a record of zealously representing their clients' interests.

14

Francisca Fajana has practiced law for more than thirty years. She has served as lead or co-counsel in class actions in federal and state courts, including *Caban Gonzalez, et al. v. Moore, et al.*, No. 1:19-cv-030345 (N.D. Ga. 2019), in which she successfully secured resolution requiring the Georgia Department of Driver Services to implement regulatory changes affording reciprocity to holders of driver's licenses from Puerto Rico and other U.S. territories; *Cunya, et al., v. Sage, et al.*, No. 2:18-cv-06405 (E.D.N.Y. 2018), class action challenging employers' failure to provide state mandated short-term disability benefit as violative of the terms and conditions provision of Title VII of the Civil Rights Act of 1964; and *Thomas v. Haslam,* 329 F.Supp.3d 475 (M.D. TN 2017), class action challenging on due process and equal protection grounds, a Tennessee statute mandating revocation of driver's license for nonpayment of court debt. She also engages in federal appellate practice leading or co-authoring amici briefs in cases such as *Students for Fair Admissions, Inc. v. Harvard College,* 143 S. Ct. 2141 (2023); *Boston Parents Coalition for Academic Excellence Corp. v. School Committee for City of Boston*, 89 F.4[th] 46 (1st Cir. 2023); *Estevez v. Berkeley College,* 2022 WL 16843460 (2d Cir. 2022).

Matthew Vogel has practiced law for over ten years and represents detained and non-detained persons in complex federal civil rights and habeas cases, including class actions. He has served as lead counsel or co-counsel in several class action and complex federal civil rights lawsuits on behalf of immigrants, including *Oldaker v. Giles,* No. 7:20-cv-00224 (M.D. Ga.); *Coreas v. Bounds*, No. 8:20-cv-00780 (D. Md.); *Alvarez v. LaRose*, Case 2:21-cv-13117 (S.D. Cal.); *Santos Garcia v. Mayorkas*, 1:20-cv-00821 (E.D. Va.); *Immig. Defenders Law Ctr. v. Mayorkas*, Case No. CV 20-9893 (C.D. Cal.), and *Dada v. Witte*, No. 1:20-CV-00458 (W.D. La.). Prior to joining the National Immigration Project (NIPNLG), he was a public defender in New Orleans, where he defended clients in death penalty and juvenile life without parole cases,

advised and trained public defenders on the immigration consequences of criminal legal system involvement, and carried a docket of upper-level felonies and misdemeanors. Prior to that, he served as a law clerk to the Honorable Keith P. Ellison of the U.S. District Court for the Southern District of Texas.

Rafaela Uribe has practiced law for four years. She has previously worked on class action litigation teams challenging police misconduct and surveillance in federal district court, *Black Love Resist in the Rust v. City of Buffalo N.Y.*, 334 F.R.D. 23 (W.D.N.Y. 2019*)*. She has also been part of litigation teams on behalf of a group of undocumented mothers; *Austin Sanctuary Network v. Mayorkas,* No. 20-CV-01686 (LJL), 2022 WL 4356732 (S.D.N.Y. Sept. 19, 2022); as well crafting a settlement on behalf of a group of transgender individuals seeking redress for discrimination faced in New York city shelter facilities *Lopez v. NYC Dept. of Homeless Services,* No. 17CV3014VECOTW, 2019 WL 3531955, at *1 (S.D.N.Y. Aug. 2, 2019), report and recommendation adopted, No. 17-CV-3014 (VEC), 2019 WL 4593611 (S.D.N.Y. Sept. 23, 2019).

LatinoJustice PRLDEF is a premier civil rights organization that defends the rights and interests of immigrant communities, including Latinos, and has done so since 1972. It has extensive experience in immigration law and class-action litigation and has the resources, competency, and commitment necessary to protect and advance the interests of all members of the proposed class throughout the litigation. LatinoJustice has served as class counsel in numerous cases in federal court, including *Plaintiffs ##1-21 v. County of Suffolk*, 15-cv-2431, 2021 WL 1254408 (E.D.N.Y. Apr. 5, 2021) and *Ligon v. City of New York*, 288 F.R.D. 72 (S.D.N.Y. 2013).

The National Immigration Project of the National Lawyers Guild (National Immigration Project; NIPNLG) is a nonprofit membership organization of immigration attorneys, legal

16

workers, jailhouse lawyers, grassroots advocates, and others working to defend immigrants'

rights and to secure a fair administration of the immigration and nationality laws. The

National Immigration Project provides technical assistance to the bench and bar, litigates on

behalf of noncitizens in all levels of the federal courts, hosts continuing legal education

seminars on the rights of noncitizens, and is the author of numerous practice advisories as

well as *Immigration Law and Defense* and three other treatises published by Thompson-West.

NIPNLG too has extensive experience in immigration law and class-action litigation and has

the resources, competency, and commitment necessary to protect and advance the interests of

all members of the proposed class throughout the litigation.

Not only are there no conflicts between or among class members or the Moving Plaintiffs,

the lawyers for the proposed class are also well qualified to provide the highest level of

experience, knowledge, competence, and skill in prosecuting the Plaintiffs' and class members'

claims and have demonstrated their willingness to vigorously represent the plaintiffs and the

proposed class. Therefore, Moving Plaintiffs meet Rule 23(a)(4)'s adequacy requirement.


### B. The Moving Plaintiffs' Proposed Class Meets the Requirements of Rule 23(b)(2).

A class may be maintained under Rule 23(b)(2) when "the party opposing the class has

acted or refused to act on grounds that apply generally to the class, so that final injunctive relief

or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P.

23(b). The Supreme Court has observed that "[c]ivil rights cases against parties charged with

unlawful, class-based discrimination are prime examples' of what [Rule 23](b)(2) is meant to

capture." *Wal-Mart Stores*, 564 U.S. at 361 (quoting *Amchem Products, Inc. v. Windsor*, 521

U.S. 591, 614 (1997)). *See Penson v. Terminal Transp. Co., Inc.*, 634 F.2d 989, 993 (5th Cir. 1981) (Rule 23(b)(2) "was intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive or declaratory relief against discriminatory practices.") (citing Advisory Committee's Note, 39 F.R.D. 98, 102 (1966)); *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975) ("the 23(b)(2) class action is an effective weapon for an across-the-board attack against systematic abuse. . . . Indeed, its usefulness in the civil rights area was foreseen by the drafters of the revised rule.") (citing Advisory Committee's Note, 39 F.R.D. 73, 102 (1966)), *disapproved of on other grounds, Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478 (1978).

Rule 23(b)(2) certification is justified if the following three conditions are met: "(1) class members must have been harmed in essentially the same way; (2) injunctive relief must predominate over monetary damage claims; and (3) the injunctive relief sought must be specific." *Yates v. Collier*, 868 F.3d 354, 366-67 (5th Cir. 2017) (quoting *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007)). Rule 23(b)(2) only applies when a single injunction or declaration could provide relief to the entire class. *Wal-Mart Stores*, 564 U.S. at 360-361. In *Yates v. Collier*, the Court certified a Rule 23(b)(2) class action made up of people in state prison who were subject to the same policy of climate control and harmed in the same way by exposure to a significant risk of serious harm due to excessive heat. 868 F.3d at 367. The court depended on the well-established principle that Rule 23(b)(2) requires common behavior by the defendant towards the class. *Id.* at 366–67. Because "the same action/inaction by Defendants is the source of any injury for the entire General Class" Rule 23(b)(2) was satisfied. *Id.*

Here, Moving Plaintiffs and proposed class members seek only declaratory and injunctive relief to prevent an injury identical to them all: denials of U.S.-citizen and lawfully present youth the right to obtain a driver's license. Such declaratory and injunctive relief will resolve all claims. Unique relief is not sought; each Plaintiff seeks only the same class-wide declaratory and injunctive remedies, which will provide relief to all proposed class members. Further, the Fifth Circuit's requirement that the injunctive relief that is sought under Rule 23(b)(2) be specific is also satisfied in this case. While this issue is more suitable for consideration at the merits stage, it is clear from the Amended Complaint that the relief requested is targeted precisely to remedy the same OMV policy and practice faced by all class members, that the class is sufficiently cohesive to allow the Court to issue an injunction that complies with Fed. R. Civ. P. 65(d), and that the requested injunctive relief provides the Defendants with specific and reasonable details regarding the acts required by them under an injunction. There will be no need for individualized inquiry as all of the class members are subject to the same OMV discriminatory policy and practice which requires their immigrant parents to present a U.S. driver's license or state ID. Injunctive relief will benefit the entirety of Moving Plaintiffs and putative class members as permanently enjoining this discriminatory policy and practice will remedy the issues of exclusion and citizen degradation caused by its enforcement. Accordingly, certification under Rule 23(b)(2) is warranted.

## IV. CONCLUSION

The Moving Plaintiffs satisfy the requirements of Rule 23(a) and Rule 23(b)(2). Therefore, the Moving Plaintiffs respectfully request that this Court enter an order certifying the class and appoint counsel as set forth in the motion above.

**Dated: March 25, 2024**


Respectfully submitted,


/s/ Francisca D. Fajana
Francisca D. Fajana (NY # 5475405)*
Rafaela Uribe (NY # 6073332)*
LATINOJUSTICE PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
Tel: 212.219.3360
Fax: 212.739.7507
FFajana@latinojustice.org
RUribe@latinojustice.org
* Admitted Pro Hac Vice

/s/ Matthew S. Vogel
Matthew S. Vogel†
Louisiana Bar No. 35363
NATIONAL IMMIGRATION
PROJECT OF THE NATIONAL
LAWYERS GUILD (NIPNLG)
2201 Wisconsin Ave, NW, Ste. 200
Washington, DC 20007
Tel: 504.569.5650
Fax: 617.227.5495
matt@nipnlg.org
†Not admitted in DC; working
remotely from and admitted in Louisiana
only.