UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

S.M., *by and through* MARIO RENE
MENDOZA, ET AL.

CIVIL ACTION

VERSUS

DAN CASEY, ET AL.

NO. 23-01499-BAJ-SDJ

<u>RULING AND ORDER</u>

Now before the Court is Defendants' **Rule 12(b)(1) and Rule 12(b)(6)**
**Motion To Dismiss For Lack Of Subject Matter Jurisdiction And Failure To**
**State A Claim (Doc. 22, the "Motion")**, filed by Defendants James M. LeBlanc and
Dan Casey, each in their official capacities (*hereinafter*, "Defendants"). The Motion is
opposed. (Doc. 27). For reasons that follow, the Motion will be granted.

I.    FACTUAL BACKGROUND

For present purposes, the following facts are taken as true:

Plaintiff S.M. is sixteen years old, and a U.S. citizen. (Doc. 18 at 5). S.M., like
other named Plaintiffs under the age of eighteen, is participating in this litigation
through her parent, Mario Rene Mendoza. (*Id.*). Plaintiff Elvis Nunez is nineteen
years old, and a permanent resident. (*Id.*). Plaintiff E.B. is sixteen years old, and a
U.S. citizen. (*Id.*). Plaintiff S.T. is seventeen years old, and a permanent resident. (*Id.*
at 6). Plaintiff K.G. is sixteen years old, and a U.S. citizen. (*Id.* at 5). Plaintiff
Asociación de Familias Unidas en Acción is a membership-based non-profit
corporation under Louisiana law, with a principal place of business in Orleans parish.
(*Id.*).

James M. LeBlanc was the Secretary of the Louisiana Department of Public Safety and Corrections (the "Department") responsible for the lawful licensing of motor vehicle operators in Louisiana at the time of Plaintiffs' Amended Complaint. (*Id.*).[1] Defendant Casey, as Commissioner of the Louisiana Office of Motor Vehicles (the "OMV"), is responsible for the policies and practices of the OMV. (*Id.* at 7).

The federal REAL ID Act standardized state requirements for the issuance of driver's licenses or identification cards. (*Id.*). To obtain a REAL ID license or identification card, applicants must present various identifying documents that include, for example, a photo identity document or non-photo identity document that includes the person's full legal name and date of birth, documentation of the person's date of birth, proof of social security account, and documentation of the person's name and address. (*Id.* at 8 (citing 6 C.F.R. §§ 37.11(c)-(g)). The REAL ID Act does not mandate a minimum age to obtain a driver's license or identification card. (*Id.* at 9).

The Department has established rules for the issuance of licenses to minors, which allow for, in limited circumstances, the issuance of a temporary instructional permit ("TIP") to a minor who is fourteen years and nine months and is in the eighth grade or higher. (*Id.* at 9). A TIP is a required first step to obtaining a driver's license. (Doc. 27 at 3).

The OMV has adopted a policy requiring first-time applicants for a driver's license (including TIPs) or identification card to show proof of identification by providing (1) a U.S. state or territory-issued birth certificate or a U.S. passport, and

---

[1] The Department has since seen a change in leadership, and LeBlanc's duties have passed to Gary Wescott.

(2) a Social Security card, Louisiana middle or high school identification card, health insurance card or school records. (Doc. 18 at 11). Proof of residence can be established by a utility bill, an unexpired driver's license or identification card issued to a minor's parent, the minor's school transcript, or other documents. (*Id.*). Critically, at the time of Plaintiffs' original driver's license application, the applicant's parent purportedly needed to "be present and provide his/her Louisiana driver's license, permit or identification card in person." (*Id.* at 12 (citing OMV Policy 3.04)).

The minor's parent must also verify his or her identity by presenting some form of identification. (Doc. 28-1, *hereinafter* "OMV Policy 6.00"). The OMV application for a driver's license or identification card, which a minor and parent must complete and sign, required the parent to present an "ID" or "DL" therewith at the time the Amended Complaint was filed. (Doc. 18 at 12). This application has since been amended to remove this requirement. (Doc. 27 at 15).

The individual Plaintiffs further allege the following.

**S.M.**

On June 5, 2023, S.M., a sixteen-year-old, applied for a TIP. (Doc. 18 at 13). She and her father presented S.M.'s Louisiana birth certificate, her father's unexpired Honduran passport, S.M.'s original Social Security card, her school identification card, and an electric utility bill. (*Id.*). The OMV requested her father's ID or driver's license—documents that he does not possess. (*Id.* at 13-14). The OMV denied S.M.'s request, and did not inform her of any right to appeal the decision. (*Id.* at 14). S.M. visited three additional OMV offices, with similar results. (*Id.*).

3

On January 3, 2024, the OMV issued S.M. the requested TIP. (*Id.* at 15). She has not yet been issued a driver's license, as she has not yet applied. (*Id.* at 16). S.M. states that applying for a permanent driver's license would result in the OMV requesting her parent's ID or driver's license, and would risk losing the driving abilities she currently possesses. (*Id.*).

**K.G.**

On May 24, 2023, K.G., a sixteen-year-old, applied for a TIP. (*Id.*). K.G. and her father presented K.G.'s Louisiana birth certificate, her father's unexpired Guatemalan passport, a water utility bill, and an electric utility bill, along with K.G.'s U.S. passport, original Social Security card, school ID, and Louisiana Department of Health Medicaid card. (*Id.* at 17). K.G. was denied a TIP because her father lacked a driver's license or state ID. (*Id.*). K.G. was not informed of any right to appeal the decision. (*Id.*).

On December 27, 2023, the OMV issued K.G. a TIP. (*Id.* at 18). Similar to S.M., K.G. has not applied for a permanent driver's license, and fears that she will lose her ability to drive if she does do so. (*Id.*).

**Elvis Nunez**

Elvis Nunez was issued a permanent resident card on December 18, 2015. He is now nineteen years old. (*Id.*). In or about June 2022, Nunez completed a driver's education course. (*Id.* at 19). However, Nunez was not permitted to take the in-class course or participate in the road instruction component because he did not possess a

4

TIP. (*Id.*). After the conclusion of the course, Nunez was issued a certificate to obtain a TIP from the OMV. (*Id.*).

Nunez and his father went to the OMV that month, where they were informed that Nunez was not eligible for a TIP because his father lacked a driver's license or state ID. (*Id.*). After Nunez turned 18, and in or around January 2023, he went again to the OMV office to obtain a TIP. (*Id.*). He was denied, because the OMV determined that he "looked young" on his permanent resident card, which was a photo of Nunez when he was approximately ten years old. (*Id.*). The OMV did not provide Nunez with information concerning his appeal rights. (*Id.* at 20).

On December 29, 2023, the OMV issued Nunez a TIP. (*Id.*). Nunez has yet to apply for a permanent driver's license, and fears that when he does so the OMV could reject his application based on his appearance in his permanent resident card. (*Id.* at 20-21).

**E.B.**

E.B., a sixteen-year-old, lives in Orleans Parish with his mother, who does not possess a driver's license or state ID. (*Id.* at 21). E.B. had never applied for a TIP, because he believed an application would be futile, (*id.* at 22). However, since the Amended Complaint was filed, E.B. went to an OMV office to obtain a TIP with his mother. (Doc. 29). E.B. was denied a TIP because his mother lacked a driver's license or state ID. (*Id.*). E.B. was not informed as to his appeal rights. (*Id.*).

### S.T.

S.T. is a seventeen-year-old permanent resident, and lives in Jefferson Parish with his mother. In or around Fall 2022, S.T. and his mother applied for a state ID at the local OMV office. (Doc. 18 at 22.). S.T. and his mother presented S.T.'s permanent resident card, S.T.'s employment authorization, S.T.'s unexpired Honduran passport, his mother's unexpired Honduran passport, and an electric utility bill. (*Id.* at 23).

S.T.'s application was denied because S.T.'s mother did not have a state ID. (*Id.*). S.T. was not issued a rejection letter and was not informed of any right to appeal the OMV's decision. (*Id.*).

### Asociación de Familias Unidas En Acción ("FUA")

FUA is a membership organization seeking to empower immigrant communities. (*Id.*). FUA alleges that its members have been unlawfully denied driver's licenses, permits, and identification cards by the OMV's policy of requiring parental U.S. driver's license or identification cards in support of first-time driver's license applications. (*Id.* at 25). FUA alleges that "to meet the needs of its members whose U.S.-born and lawfully present children cannot obtain driver's licenses and identification cards because of the OMV's discriminatory policy and practice, FUA has had to divert resources away from its mission-related work." (*Id.* at 26).

## II.    PROCEDURAL HISTORY

On March 12, 2024, Plaintiffs filed their Amended Complaint, setting forth the factual allegations outlined above and bringing claims for violations to Plaintiffs' constitutional and statutory rights as set forth by the Equal Protection Clause of the

Fourteenth Amendment, the Due Process Clause of the Fourteenth Amendment, Title VI of the Civil Rights Act of 1964, which prohibits discrimination under any program or activity receiving federal financial assistance on the grounds of race, color, or national origin, and La. R.S. § 32:419. (*Id.* at 33-38). Plaintiffs argue that Defendants' requirement that parents possess a U.S. driver's license or identification card to support first-time minor driver's license applications discriminates on the basis of parental alienage, national origin, and/or immigration status, and denies Plaintiffs' equal protection of the law on account of the same. (*Id.* at 34).

Plaintiffs also argue that Defendants violated Plaintiffs' right to due process by failing to offer Plaintiffs an opportunity to appeal their respective denials. (*Id.* at 36). In support of their claims under Title VI, Plaintiffs aver that Defendants' policies unlawfully discriminate and deny Plaintiffs access to driver's licenses and identification cards despite receiving federal grant money. (*Id.* at 37-38). Finally, Plaintiffs argue that Defendant violated La. R.S. § 32:419, which provides that those whose license-applications are rejected are to be given an opportunity to file an appeal, within thirty days, with the district court of the parish in which the applicant resides. (*Id.* at 38). Plaintiffs' requested relief includes declaring Defendants' policy and practice of denying otherwise eligible U.S.-citizens and lawfully present minors driver's licenses to be illegal and unconstitutional, to declare that Defendants' policy and practice of not affording notice and an opportunity for a hearing to U.S.-citizens and lawfully present minors after their applications are rejected is unconstitutional, and to declare that Defendants' policy and practice violate La. R.S. § 32:419.

Plaintiffs' request injunctive relief that mirrors this declaratory relief in the form of an order that requires Defendants to cease with the above. (*Id.* at 39-40).

Defendants have now filed the Motion that is presently before the Court, arguing that Plaintiffs' claims are moot given certain changes enacted by the Department and the OMV,[2] that certain Plaintiffs lack standing to assert a claim, and that other Plaintiffs have failed to state claims upon which relief can be granted. (Doc. 22-1 at 5-12).

## III.   LEGAL STANDARD

Defendants invoke dismissal under Federal Rules of Civil Procedure 12(b)(1) and Rule 12(b)(6). The analysis under both Rules is functionally the same. The critical issue is whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) ("A motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief.").

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[2] To be described *infra*.

inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). When conducting its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (internal citations omitted). Conclusory allegations or legal conclusions are insufficient defenses to a well-pled motion to dismiss. *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017).

Concerning the issue of mootness, the U.S. Court of Appeals for the Fifth Circuit has instructed that:

> "Mootness is 'the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).'" *Ctr. for Individual Freedom v. Carmouche,* 449 F.3d 655, 661 (5th Cir. 2006) (quoting *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)). If a case has been rendered moot, a federal court has no constitutional authority to resolve the issues that it presents. *In re Scruggs,* 392 F.3d at 128. Therefore, before considering any other matters raised by the parties, we are obliged to "resolve the standing question as a threshold matter of jurisdiction." *Cole v. Gen. Motors Corp.,* 484 F.3d 717, 721 (5th Cir. 2007).

*Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 525 (5th Cir. 2008).

## IV.    DISCUSSION

Defendants have provided various reasons for the Court to grant the Motion. The Court finds merit in each.

### a.  Equal Protection and Title VI Claims

Defendants assert that Plaintiffs' Equal Protection and Title VI claims are now moot, as the requested relief—the issuance of TIPs—has been completed. (Doc. 22-1

at 5). Plaintiffs disagree, and contend that a live controversy exists between Plaintiffs and Defendants, notwithstanding Defendants' voluntary amendment to the driver's license application, because of OMV Policy 6.00. (Doc. 27 at 7). According to Plaintiffs, OMV Policy 6.00 requires a minor applicant for a driver's license to be accompanied by a parent or legal guardian, and for this parent or legal guardian to present a U.S. "DL or ID." (*Id.* at 15).

The Court has examined OMV Policy 6.00, and cannot ascertain the basis for Plaintiffs' contention. There is no section to OMV Policy 6.00 that requires a parent or legal guardian to present a U.S. "DL or ID." (*See* OMV Policy 6.00). Rather, driver's license applicants aged seventeen and under must be accompanied by a custodial parent or legal guardian, who shall have: "[d]ocumentation. . . to prove custody or legal guardianship" and "identification." (*Id.*). Identification can be proven by supplying the OMV with "[o]ne primary and two secondary documents," "[t]wo primary documents," or "[i]f applicant has a Louisiana identification card/driver's license with a photo which clearly identifies the applicant and the Social Security number is part of the file, additional identification is **not** required." (*Id.* (emphasis in original)).

Primary documents include: (1) a U.S. birth certificate, or a "Certificate of Birth Abroad issued by the U.S. Department of State," or a ""Certificate of Naturalization," (2) a U.S. passport, (3) a foreign passport, appropriately stamped and accompanied by proper immigration documents, (4) a permanent residence card,

(5) a Department of Homeland Security ("DHS") Refugee travel document, and (6) a DHS Permit to reenter the United States. (*Id.*).

Secondary documents include: (1) a DL or ID issued by an out-of-state or out-of-country motor vehicle department, (2) a social security card or number verification, (3) an identification card (with photo), which may be from any Louisiana educational center, any employment from the State of Louisiana, or from an individual's Employment Authorization Document issued by the Department of Health and Hospitals, or other qualifying sources, (4) an educational diploma, (5) medical documentation, such as a Medicare or Medicaid Card, and (6) miscellaneous documents, such as adoption papers, baptismal certificates, U.S. marriage licenses, Louisiana property deeds, vehicle registrations, motor vehicle lien instruments, utility statements, payroll stubs, W-2 forms for two years, prison release documents, and more. (*Id.*).

Thus, by the plain terms of OMV Policy 6.00, U.S. IDs or DLs are not the exclusive documents required from custodial parents or legal guardians in support of a minor's application for a driver's license. (*See id.*). To the contrary, a parent or guardian who has immigrated to the United States can furnish, for example, their foreign passport, properly stamped, a payroll stub, and a local utility statement in support of their minor's driver's license application. (*See id.*).

The source of Plaintiffs' issues therefore, as Defendants note, appears to have been the notation in the Louisiana driver's license application form that required a parent or legal guardian to provide a DL or ID. Plaintiffs concede that this application

11

form has been amended to remove this requirement. (Doc. 27 at 15). The majority of Plaintiffs' complaints therefore, at least facially, appear moot. *See Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 832 (5th Cir. 2023) ("[t]he mootness issue often arises where, as here, a statute or regulation is amended or repealed after plaintiffs bring a lawsuit challenging the legality of that statute or regulation. In that case, mootness is the default.").

A look at Plaintiffs' requested relief supports this conclusion. *See id.* (plaintiff's injury "necessarily parallels its requested relief"). Plaintiffs' requested relief for the Equal Protection and Title VI claims amount to a declaratory judgment that a U.S. driver's license or identification card for parents or legal guardians in conjunction with a minor's driver's license application is not required, along with accompanying injunctive relief in the form of an order to Defendants to cease rejecting Plaintiffs' driver's license applications for lack of a U.S. driver's license or identification card. (Doc. 18 at 39-41).

But OMV Policy 6.00, by its plain terms, already mandates Plaintiffs' desired result. Further, the accompanying injunctive relief has already been meted out by Defendants themselves, at least as to those named Plaintiffs who have submitted additional driver's license applications. Plaintiffs contend that the Court's reading of OMV Policy 6.00 is not being adhered to by Defendants, and that E.B.'s recent denial is proof. However, even assuming this is Defendants' continued practice, a conclusion that is belied by Defendants' issuance of TIPs to other named Plaintiffs, it does not necessarily follow that the Court must conclude that Defendants' explicit *policies* are

flawed. Alternatively, this Court lacks the authority to enjoin the State of Louisiana to follow its own laws or policies—which is what Plaintiffs request given the Court's understanding of OMV Policy 6.00. *See Valentine v. Collier*, 956 F.3d 797, 802 (5th Cir. 2020) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 (1984)).

Plaintiffs also argue that the driver's license requirement issue is not mooted because of the voluntary cessation doctrine. This doctrine provides that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). The central issue for application of the voluntary cessation doctrine is whether a party asserting mootness can "show that the practice cannot 'reasonably be expected to recur.'" *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

The Court finds that Defendants have done so. Defendants have unequivocally amended the driver's license application form to remove the requirement that a parent or legal guardian must submit a U.S. driver's license or identification card. There is no indication that Defendants are likely to restore this requirement to the application form. To the contrary, Defendants have assisted Plaintiffs in processing their driver's license applications, and if OMV Policy 6.00, effective as of May 1986, is to be given primary importance, the inclusion of the offending requirement in the application form was always erroneous.

The State of Louisiana's actions are dissimilar from those at issue in *Fikre*. Here, the State of Louisiana has not cabined their removal of the problematic requirement to a "for now" basis, and, unlike in *Fikre*, the conditions underlying Defendants' denial of Plaintiffs' application may not be revived through additional action by Plaintiffs. *See* 601 U.S. at 242 ("government placed [plaintiff] on the No Fly List for. . . his religious beliefs. . . the government may relist [plaintiff] if he does the same or similar things in the future—say, attend a particular mosque or refuse renewed overtures to serve as an informant."). For these reasons, the Court finds that Defendants have carried their burden of showing that a reneging on the removal of the U.S. DL or ID requirement from their policies cannot reasonably be expected to occur, and concludes that Plaintiffs' Equal Protection and Title VI claims have been rendered moot.[3]

### b. Due Process and State Law Claims

As to Plaintiffs' due process and state law claims, Defendants contend that such claims are mooted, time-barred, or that certain Plaintiffs lack standing. The Court agrees.

Beginning with the state-law claims brought under La. R.S. § 32:419, the Court concludes that it is without jurisdiction. This Court lacks subject matter jurisdiction

---

[3] Of course, should Defendants in fact renege on their policy updates, Plaintiffs can refile their suit and, in this suit, alert the Court to Defendants' previous actions to defeat jurisdiction. Alternatively, should Plaintiffs continue to be denied driver's licenses despite the plain language of Defendants' policies, Plaintiffs may refile and restyle the present suit under other possible theories of liability, including a failure-to-train theory of liability, and may include allegations as to Defendants' *de facto* policy to deny licenses to those similarly situated.

over suits brought against a state absent the consent of that state under the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97–98 (1984). There is no indication in La. R.S. § 32:419 or La. R.S. § 32:414(F)(4) that the State of Louisiana has consented to have Plaintiffs' state-law claims heard in federal court. The *Ex Parte Young* doctrine, 209 U.S. 123 (1908), an exception to Eleventh Amendment immunity, allows for states to be sued for violations of federal law. *Young v. LeBlanc*, No. CV 23-681-SDD-RLB, 2024 WL 4157948, at *5 (M.D. La. Sept. 11, 2024) (citing *Aguilar v. Texas Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998)). The doctrine applies to Plaintiffs' Equal Protection, Title VI, and due process claims, as such claims are based on violations to federal law. *See id.* Plaintiffs' claims under La. R.S. § 32:419 are state-law claims, against state officers in their official capacities, and seek equitable relief. (Doc. 18 at 38). Absent the consent of the State of Louisiana, which is not present here, the Court lacks subject matter jurisdiction over such claims. *See Hanna v. LeBlanc*, 716 F. App'x 265, 268 (5th Cir. 2017). Plaintiffs' claims under La. R.S. § 32:419 will therefore be dismissed.

Regarding Plaintiffs S.M., K.G., and Nunez's due-process claims, Defendants argue that said Plaintiffs have suffered no continuing injury, given that each has been issued a TIP, and that no future injuries are anticipated. (Doc. 22-1). Plaintiffs respond by arguing that the Court nevertheless has standing because "Plaintiffs reasonably expect Defendants will again deny them due process should they be rejected when they surrender their temporary permits or apply for permanent driver's licenses." (Doc. 27 at 29).

"Article III grants jurisdiction to federal courts only over actions involving an 'actual case or controversy.'" *Abdullah v. Paxton*, 65 F.4th 204, 208 (5th Cir.), *cert. denied*, 144 S. Ct. 188, 217 L. Ed. 2d 75 (2023) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). For an actual case or controversy to exist, there must be an injury in fact that Plaintiffs "ha[ve] sustained or [are] immediately in danger of sustaining." *Id.* (quoting *City of Los Angeles*, 461 U.S. at 101). This injury may not be "speculative, conjectural, or hypothetical." *Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). To this point, allegations "of only a 'possible' future injury. . . will not suffice." *Id.* (citing *Clapper*, 568 U.S. at 409).

Plaintiffs S.M., K.G., and Nunez, by their own admission, assert injuries for their due process claims that are doubly hypothetical. Plaintiffs argue that "should" Defendants deny their yet-to-be submitted driver's license applications, Defendants can be "reasonably expected" to deny them due process. (Doc. 27 at 29). The Court concludes that, because of this mere possibility, Plaintiffs S.M., K.G., and Nunez lack standing to bring their due process claims, as the injury-in-fact requirement is not satisfied by Plaintiffs' speculation that their driver's license applications will be denied.[4]

---

[4] While the Court concludes that this is the proper result given the relevant precedent and the changes Defendants have made to the driver's license application forms, Plaintiffs' allegations, if taken as true, shine a light on Defendants' consistent failure to provide individualized notice of review rights to those whose driver's license applications are rejected. While the Court concludes below that this lack of notice is not a due process violation because publicly available statutes inform applicants as to their rights, best practice would be for the State of Louisiana to provide applicants with information as to their review rights contemporaneously with any license application rejection.

16

As to the remaining Plaintiffs' due process claims, the Court concludes that, even if Plaintiffs are correct in that applicants possess a liberty interest in the application and issuance of driver's license, (Doc. 27 at 30 (citing *Raper v. Lucey*, 488 F.2d 748, 752 (1st Cir. 1973)), the real gravamen of Plaintiffs' claims, that Defendants' failed to provide notice to applicants of their review rights, does not supply a base upon which Plaintiffs' due process claims may stand, since applicants are given notice of their appeal rights via publicly available state statutes. *See* La. R.S. § 32:419; *see* La. R.S. § 32:414; *see, e.g.*, *LeBeouf v. Manning*, No. CIV.A. 12-2583, 2015 WL 3650797, at *11 (E.D. La. June 11, 2015) ("[defendant's] appeal procedures are readily available to the public, and the Supreme Court has held that 'individualized notice of state law remedies, which. . . are established by published, generally available state statutes and case law' is not necessary to satisfy postdeprivation due process." (quoting *City of West Covina v. Perkins*, 525 U.S. 234, 241 (1999))); *Reams v. Irvin*, 561 F.3d 1258, 1265 (11th Cir. 2009) (plaintiff's "contention that she was entitled to personal notice of her right to challenge" a deprivation was rejected because the state had established remedial procedures by publicly available state statutes); *M.A.K. Inv. Grp., LLC v. City of Glendale*, 897 F.3d 1303, 1318 (10th Cir. 2018) (same).

This conclusion is not in tension with the U.S. Court of Appeals for the First Circuit's holding in *Raper*, given that here, unlike in *Raper*, Plaintiffs have been made aware of the reasons underpinning Defendants' license application rejections, and Plaintiffs therefore have the information necessary to lodge attacks on such decisions

in the appropriate state court venue. *See* 488 F.2d at 753 ("we are at a loss to comprehend how such a hearing could be said to be 'meaningful' if prior thereto the plaintiff was unaware of the grounds for the [defendant's] decision"). Plaintiffs have provided no further authority for the proposition that individualized notice of appeal rights is constitutionally required in the license application process. Remaining Plaintiffs' due process claims will therefore be dismissed without prejudice.

## V.     CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' **Motion (Doc. 22)** be and is hereby **GRANTED**. Plaintiffs' claims are hereby **DISMISSED WITHOUT PREJUCIDE**.

**IT IS FURTHER ORDERED** that Defendants' **Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 17)** be and is hereby **TERMINATED AS MOOT**.

Baton Rouge, Louisiana, this 30th day of January, 2025

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**